UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
DEC 1 8 2017
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

NICO SCHWEIGER,  §
  §
*Plaintiff*,  §
  §
v.  §  Civil No. SA-17-CV-00660-OLG
  §
USAA FEDERAL SAVINGS BANK and  §
ALLTRAN FINANCIAL, L.P.,  §
  §
*Defendants*.  §
  §

## MEMORANDUM AND ORDER

Before the Court is Defendant USAA Federal Savings Bank's Motion to Dismiss for failure to state a claim for relief pursuant to Rule 12(b)(6) (docket no. 8). For the reasons explained below, Defendant's motion is GRANTED in part, DENIED in part, and deemed MOOT in part.

## BACKGROUND

The dispute concerns an alleged settlement agreement (the "Agreement") between Plaintiff Nico Schweiger ("Plaintiff"), Plaintiff's debt relief company ("NDR"), Defendant USAA Federal Savings Bank ("USAA"), and USAA's debt collector, Defendant Alltran Financial, LP ("Alltran"). The alleged Agreement, which was sent from Alltran to NDR on October 11, 2016, states:

> SETTLEMENT!!!
>
> [USAA] has agreed to accept the offer of 12 payment(s) totaling $4,112.00 as settlement for monies owing on [Plaintiff's] above referenced account. Please make [NDR's] or [Plaintiff's] check or money order payable to [USAA]. The terms of the agreement are:
>
> *[Chart listing required payment dates and corresponding payment amounts]*
>
> This settlement offer is void if the agreed payments are not made as stated above.

Docket no. 1-2. Following entry of the Agreement, Plaintiff alleges that he timely made the first two requisite settlement payments by placing the funds in a trust account for Defendants' withdrawal and processing. Docket no. 1 ¶¶ 13-15. However, Plaintiff alleges that the payments were never withdrawn or processed from the account. *Id.* Plaintiff further alleges that Defendants notified Plaintiff that the account had been recalled and that the Agreement would not be honored. *Id.* ¶¶ 16-17.

Plaintiff filed this action on July 20, 2017 alleging Defendants breached the Agreement regarding the repayment of Plaintiff's debt. Docket no. 1. Plaintiff asserts claims for (i) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1962, (ii) breach of contract, (iii) breach of the implied covenant of good faith and fair dealing, and (iv) violations of the Texas Fair Debt Collection Practices Act ("TDCPA"), Tex. Fin. Code Ann. § 392, et seq.

Defendant USAA has moved to dismiss each of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing in part, that the Agreement was "void" because Plaintiff did not make his payments by check or money order as stated in the Agreement. Docket no. 8 at 1, 4-5.

## APPLICABLE LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a), a complaint is considered well pled if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a) is considered in conjunction with Fed. R. Civ. P. 12(b)(6), which provides that a complaint may be dismissed if it "fails to state a claim upon which relief can be granted". Courts apply these rules through the two-part process outlined by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of all facts alleged in the complaint, it fails to state a "claim to relief that is plausible on its face". *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order to state a plausible claim to relief, the complaint must include "allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory". *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Those allegations may be "either direct or inferential". *Id.* In applying Rule 12(b)(6), the Court must distinguish between pleadings of fact, which are presumed as true, and statements of legal conclusion, which are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 679. "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief,' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265 (1986)). Throughout the Rule 12(b)(6) analysis, "[t]he complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff." *Morgan v. Swanson*, 659 F.3d 359, 370 n.17 (5th Cir. 2011) (en banc) (quoting *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005)). As a general rule, the Court is limited to considering the contents of the pleadings and the attachments thereto when analyzing a motion to dismiss under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6); *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

## DISCUSSION

Defendant USAA moves to dismiss each of the four counts in Plaintiff's Complaint. The Court will address each count in turn.

### I. Choice of Law

As a threshold matter, the Court must decide the substantive law that will be applied to the analysis of Plaintiff's breach of contract and implied covenant of good faith and fair dealing

claims.[1] The parties did not brief the choice-of-law issue, however, USAA cited Texas substantive law in its motion to dismiss. Plaintiff did not cite the legal authority of any state in his response.

A court exercising jurisdiction supplemental to its federal question jurisdiction (under 28 U.S.C. § 1367) applies the choice of law rules of the forum state. *Kira, Inc. v. All Star Maint.*, A-03-CA-950 LY, 2006 WL 2193006, at *5 (W.D. Tex. July 31, 2006); *In re Combustion, Inc.*, 960 F.Supp. 1056, 1059 (W.D. La. 1997). When determining which state's contract law to apply in the absence of a valid choice-of-law provision, Texas courts use the "most significant relationship" choice-of-law analysis outlined in the Restatement (Second) of Conflict of Laws. *R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005); *Kira, Inc.*, 2006 WL 2193006, at *5; *Nunez v. Hunter Fan Co.*, 920 F. Supp. 716, 718 (S.D. Tex. 1996). Factors used to determine the law that applies include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Nunez*, 920 F. Supp. at 718-19 (citing Restatement (Second) of Conflict of Laws § 188). The factors are "to be evaluated according to their relative importance with respect to the particular issue". *Id*; *see also Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) (stating that "the number of contacts with a particular state is not determinative" and "[s]ome contacts are more important than others").

Here, the Agreement contains no choice-of-law provision. USAA and Alltran have their principal places of business in Texas, whereas Plaintiff is a California resident. Docket no. 1

---

[1] This court has federal question jurisdiction over Plaintiff's FDCPA claim pursuant to 28 U.S.C. § 1331, and that claim is governed by federal law. *See* 15 U.S.C. § 1692. A court analyzing a claim arising under a state statute applies that state's substantive law, *see Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938), so Plaintiff's TDCPA claim will be governed by Texas substantive law.

4

¶¶ 3-5. Plaintiff's debt relief company has a New York address (*see* docket no. 1-2), and Plaintiff's trust account, from which payments were attempted, appears to be managed from Oklahoma (*see* docket no. 1-2). The record does not reflect the place of negotiation of the Agreement or the location where Plaintiff incurred his debt. However, the Agreement calls for performance to be made via payments to USAA, presumably to its principal place of business in Texas. Accordingly, after evaluating the contacts according to their relative importance, the Court finds that Texas has the "most significant relationship" to the Agreement, and Texas contract law should apply to Plaintiff's breach of contract claim.

The Restatement's "most significant relationship" test also applies to the choice-of-law analysis for Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. *See Miller v. KFC Corp.*, No. 3:99-CV-1566D, 2001 WL 585763, at *6-7 (N.D. Tex. May 24, 2001). To the extent Plaintiff's cause of action is a tort claim and the choice-of-law analysis is separate from the analysis done for Plaintiff's breach of contract claim, the Restatement (Second) of Conflict of Laws § 145 provides the relevant factors for determining which state has the most significant relationship to the parties and the occurrence.[2] *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990).

The record contains no information regarding the location of the negotiation or alleged "inducement" of the Agreement. Plaintiff is a California resident (docket no. 1 ¶ 5), however, each Defendant has its principal place of business in Texas (*id.* at ¶¶ 3-4). Further, specific allegations in the Complaint regarding Defendants' alleged refusal to honor the Agreement

---

[2] Under Texas law, for example, a claim for breach of the implied covenant of good faith and fair dealing is a tort claim. *See Collier v. CitiMortgage, Inc.*, No. 3-14-CV-906-M (BN), 2014 WL 4181449, at *6 (N.D. Tex. Aug. 22, 2014). Pursuant to the Restatement (Second) of Conflict of Laws § 145, factors to consider in determining the applicable law for a tort cause of action include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the residence, nationality, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.

describe statements made by Alltran and USAA employees, presumably from their principal place of business. *Id.* at ¶¶ 16-17. The only law relied upon by the parties with respect to Plaintiff's implied covenant claim is USAA's citation to Texas law. Docket no. 8 at 2 (citing *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653 (W.D. Tex. 2013)). Finally, as discussed above, the Agreement that is central to the claim has its most significant relationship with the state of Texas. After weighing each state's relationship to the claim, the Court concludes that Texas law also governs the analysis of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

## II. Fair Debt Collection Practices Act

USAA first moves to dismiss Plaintiff's FDCPA claim against USAA. Docket no. 8 at 3-4. USAA argues that it may not be liable under the FDCPA because it is not a "debt collector" under the terms of the statute. *Id.*; *see also McZeal v. Ocwen Fin. Corp.*, 252 F.3d 1335, at *1 (5th Cir. 2001) (unpublished table decision) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)) ("[A] creditor . . . that collects its own debt . . . is not a debt collector under the FDCPA."). Plaintiff responds that the Complaint did not allege an FDCPA claim against USAA, and instead, only asserted an FDCPA claim against Alltran, USAA's debt collector. Docket no. 11 ¶¶ 9-10.

Upon review of the Complaint, the Court agrees with Plaintiff. Although Plaintiff's Complaint references "Defendants" in passing in one sentence in its FDCPA count (docket no. 1 ¶ 24), the Complaint only alleges that "Alltran violated provisions of the FDCPA" (docket no. 1 ¶¶ 25-26). Because there is no pending FDCPA claim against USAA, the Court finds USAA's motion moot to the extent it seeks to dismiss Count I of the Complaint.

### III. Breach of Contract

USAA next argues that Plaintiff failed to perform as specified under the settlement agreement provided by Alltran, and therefore, the Agreement was void. Docket no. 1 at 1, 4-5. Accordingly, USAA moves to dismiss Plaintiff's breach of contract, implied covenant of good faith and fair dealing, and TDCPA claims, all of which USAA asserts are premised on USAA's alleged breach of the Agreement. *Id.* at 1-2, 5.

Under Texas law, a plaintiff alleging a breach of contract must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (quoting *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ)).

#### A. Existence of a Valid Contract

In his Complaint, Plaintiff alleges that an enforceable settlement agreement existed between the parties and that it was supported by bargained-for consideration. Docket no. 1 ¶¶ 10-12. In its motion, USAA argues that "the contract was void due to the Plaintiff's non-compliance". Docket no. 8, at 1. USAA does not argue that the parties never agreed to a settlement contract, that it or the Plaintiff was not a party to the Agreement, nor that the Agreement terms are anything other than those attached as Exhibit A to Plaintiff's Complaint.

Under Texas law, one party's nonperformance does not "void" a contract. *See Lexington Ins. Co. v. Alliance Residential Mgmt., L.L.C.*, No. 4:10-CV-729, 2010 WL 4226460, at *3-4 (S.D. Tex. Oct. 20, 2010). However, one party's nonperformance may excuse the other party's performance. *See id.* at *4 ("[The] argument that nonperformance is ground for rendering the contracts void or voidable is incorrect as a matter of law; at most, [the other party] may be

excused from performing, but contracts are not simply rendered void by the nonperformance of a signatory."). Accordingly, the Court finds that Plaintiff's Complaint sufficiently alleges the existence of a valid contract between Plaintiff and USAA (*see* docket no. 1 ¶¶ 10-12), and USAA's assertion that the Agreement was "void" due to Plaintiff's nonperformance will be analyzed under the second and third elements of the breach of contract analysis.

### B. Plaintiff's Performance

The second element of a breach of contract claim requires Plaintiff to sufficiently plead that he tendered performance or that he was excused from doing so. *Villarreal*, 814 F.3d at 767. This point is contested by the parties. Plaintiff alleges he complied with the Agreement by creating a trust from which USAA could withdraw funds.[3] Docket nos. 1 ¶¶ 13-14 & 1-3. USAA, on the other hand, argues that Plaintiff violated the terms of the Agreement by failing to tender payment by check or money order made payable to USAA. Docket no. 8 at 1, 4-5.

"The rule of substantial performance allows one to go forward with a contract action even though he has breached nonmaterial terms of the contract but has substantially performed it". *Patel v. Ambassador Drycleaning Co., Inc.*, 86 S.W.3d 304, 306 (Tex. App.—Eastland 2002, no pet.) (citing *Dobben v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)). "Substantial performance means performance of the essential elements of a contract, provided that the defects in performance do not prevent the parties from accomplishing the purpose of the contract." *Matador Drilling Co., Inc. v. Post*, 662 F.2d 1190, 1195 (5th Cir. 1981).[4] The doctrine of

---

[3] Exhibit B, attached to Plaintiff's Complaint, indicates that payments may have been attempted from Plaintiff's trust account. *See* Docket no. 1-3.

[4] *See also Balcones Corporation v. Sutherland*, 318 S.W.2d 691, 694 (Tex. Civ. App.—San Antonio 1958, writ ref'd n.r.e.), in which the court stated that "substantial performance" means:

> [T]here has been no willful departure from the terms of the agreement and no omission in essential points and that the agreement has been honestly and faithfully performed in its material and substantial particulars and the only

8

substantial performance applies to various types of contracts, including settlement agreements. *Patel*, 86 S.W.3d at 306. "In a contract action based upon substantial performance, the party seeking relief under the doctrine bears the burden of proving that he did substantially perform in accordance with the agreement." *Id.* at 307. Whether a party has substantially performed its obligations under an agreement is an issue of fact for the jury or fact finder, *Smith v. Smith*, 112 S.W.3d 275, 279 (Tex. App.—Corpus Christi-Edinburg 2003, pet. denied), and may only be decided as a matter of law if reasonable jurors could reach only one verdict. *See Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017).

Taking Plaintiff's allegations as true, it appears that Plaintiff did not tender performance as called for by the exact language of the document.[5] The alleged Agreement requests that Plaintiff's debt relief company "[p]lease make [its] or [Plaintiff's] check or money order payable to [USAA]". Docket no. 1-2. Plaintiff alleges that he placed the required funds in a trust for the repayment of his debt and that "Defendants never withdrew these electronic payments from Plaintiff's trust account". Docket no. 1 ¶¶ 14-15. In making these allegations, Plaintiff admits he failed to tender payment by check or money order as requested in the alleged Agreement.

Notwithstanding that fact, however, the Court cannot find—as a matter of law—that Plaintiff's efforts to make payment to Defendants did not constitute "substantial performance" of his obligations. The settlement called for Plaintiff to make twelve monthly payments totaling $4,112.00, at which point Defendants would settle and close Plaintiff's account. Docket nos. 1, ¶ 11 & 1-2. Plaintiff alleges that he attempted to make timely, electronic payments via his debt

---

variance from the strict and literal performance consists of technical or unimportant omissions or details.

[5] Plaintiff has not alleged facts in his Complaint or attached exhibits indicating that the actual agreement between the parties was anything other than what is represented in Exhibit A to his Complaint (docket no. 1-2).

settlement company (*id.* at ¶ 13), and USAA's motion does not dispute this fact (docket no. 8 at 4). A finder of fact could determine that such payment attempts constituted "performance of the essential elements of [the] contract" and that "the defects in performance [did] not prevent the parties from accomplishing the purpose of the contract". *See Matador Drilling Co.*, 662 F.2d at 1195. Furthermore, while the Court notes that the document indicates that Defendants' performance is subject to the payments being made "as stated above", Defendants' *request* for a specific form of payment *precedes* the portion of the document that states "The terms of the agreement are . . .". Docket no. 1-2.

Accordingly, for the purposes of its analysis of USAA's motion to dismiss, the Court finds that Plaintiff has sufficiently alleged that he substantially performed his obligations under the Agreement.

### C. Breach of Contract by USAA

The third element of a breach of contract claim requires Plaintiff to sufficiently plead that the defendant "breached [its] duty to perform under the agreement's terms". *Liberty Mut. Ins. Co. v. SLC Construction, LLC*, No. H-10-4776, 2012 WL 12894736, at *6 (S.D. Tex. April 13, 2012). "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004). However, "when a breach is immaterial, the nonbreaching party *is not excused* from future performance but may sue for the damages caused by the breach." *Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 654 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (emphasis added). A party that withholds its own performance following a nonmaterial breach by its counterparty may be liable for breach of contract. *See id.*; *Bartush-Schnitzius Foods Co.*, 518 S.W.3d at 436.

"Whether a party's breach of contract is so material as to render the contract unenforceable is a question of fact to be determined by the trier of fact." *Levine*, 448 S.W.3d at 654; *see also Bartush-Schnitzius Foods Co.*, 518 S.W.3d at 436 ("Generally, materiality is an issue to be determined by the trier of facts."). "Each contract should be considered separately to determine its material terms." *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *see also Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 514 (Tex. 2003) ("[T]he materiality of a contract term is determined on a contract-by-contract basis, in light of the circumstances of the contract."). However, a finding that Plaintiff substantially performed his obligations under the contract necessarily precludes a finding that Plaintiff materially breached the contract. *Measday v. Kwik–Kopy Corp.*, 713 F.2d 118, 124 (5th Cir. 1983) ("If a party has committed a material breach [of a contract], his performance cannot be substantial.").

As discussed above, the Court cannot conclude at this stage that Plaintiff did not substantially perform his obligations under the Agreement. Thus, the Court also cannot conclude—as a matter of law—that Plaintiff's attempts to make settlement payments through a trust account constituted a material breach of the Agreement. If Plaintiff did not materially breach the Agreement, USAA's performance was not excused, and Plaintiff's Complaint adequately alleges that USAA breached its obligations under the Agreement by failing to honor the parties' settlement. Docket no. 1 ¶¶ 16-18.

Accordingly, Plaintiff's Complaint states a breach of contract claim that is plausible on its face,[6] and USAA's motion to dismiss Count II of Plaintiff's Complaint is denied.

---

[6] Plaintiff has alleged that he suffered actual and monetary damages due to Defendants' breach (docket no. 1 ¶ 33), and USAA has not challenged that element of Plaintiff's breach of contract claim in its motion to dismiss.

11

## IV. Implied Covenant of Good Faith and Fair Dealing

"Under Texas law, a claim for breach of the duty of good faith is a tort action that arises from a contract." *Collier*, 2014 WL 4181449, at *6 (citing *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App.—Dallas 1993, writ dism'd w.o.j.)). The Supreme Court of Texas has consistently held, however, that "a duty of good faith is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power." *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708–09 (Tex. 1990); *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 418 (Tex. 1995); *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983); *see also Collier*, 2014 WL 4181449, at *6 ("A duty of good faith and fair dealing does not exist in all contractual contexts.").

Plaintiff's Complaint does not allege that a "special relationship" existed between Plaintiff and USAA. Moreover, Texas courts have not applied the duty of good faith to ordinary contractual relationships. *See Fireman's Fund Ins. Co. v. Murchison*, 937 F.2d 204, 208-09 (5th Cir. 1991). For example, there is ordinarily no duty of good faith in the context of creditor-debtor relationships. *See id.*; *Collier*, 2014 WL 4181449, at *6 (duty does not generally apply to lender-lendee relationships); *Lovell v. Western Nat. Life Ins.*, 754 S.W.2d 298, 303 (Tex. App.—Amarillo 1988, writ denied) (duty does not generally apply to mortgagor-mortgagee relationship); *Coleman*, 795 S.W.2d at 709 (duty does not generally apply to creditor-guarantor relationship).

Because a broader implied covenant of good faith and fair dealing is not recognized in every contract under Texas law, *see English*, 660 S.W.2d at 522, and Plaintiff has not alleged the existence of a "special relationship", Plaintiff's Count III does not "state a claim to relief that is

plausible on its face". See *Twombly*, 550 U.S. at 570. Accordingly, USAA's motion to dismiss is granted as to Plaintiff's claim for the breach of implied covenant of good faith and fair dealing.

## V. Texas Fair Debt Collection Practices Act

Plaintiff has also asserted claims against USAA under the Texas Fair Debt Collection Practices Act. The TDCPA defines "debt collector" as "a person who directly or indirectly engages in debt collection". Tex. Fin. Code Ann. § 392.001(6). In contrast to the FDCPA, the TDCPA does not exclude USAA from its application merely because it is the original creditor attempting to collect a debt.[7] See *Smith v. Heard*, 980 S.W.2d 693, 697 (Tex. App.—San Antonio 1998, pet. denied).

To state a claim for relief under the TDCPA, a plaintiff must allege that: (1) the debt is consumer debt; (2) the defendant is a debt collector as defined by the TDCPA; (3) the defendant committed a wrongful act in violation with the TDCPA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act." *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-CV-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012) (citing Tex. Fin. Code Ann. §§ 392.001–392.404); *Birchler v. JPMorgan Chase Bank*, No. 4:14-CV-81, 2015 WL 1939438, at *5 (E.D. Tex. Apr. 29, 2015). Plaintiff alleges that Defendants violated Tex. Fin. Code Ann. §§ 392.304(a)(8) and 392.304(a)(19) "by falsely and deceptively inducing Plaintiff to enter into a settlement agreement which they did not intend to adhere to and/or intended to breach".[8] Docket no. 1 ¶¶ 39-41.

---

[7] USAA did not move to dismiss on the basis that it is not a "debt collector" under the TDCPA.

[8] Tex. Fin. Code Ann. § 392.302(a)(8) prohibits debt collectors from "misrepresenting the character, extent, or amount of a consumer debt". Tex. Fin. Code Ann. § 392.304(a)(19) is a catch-all provision that prohibits debt collectors from "using any other false representation or deceptive means to collect a debt".

USAA argues Plaintiff has failed to establish a claim for relief under the TDCPA because Plaintiff's TDCPA claim is "derivative of and predicated upon an alleged breach of contract [by USAA]" and "predicate[d] . . . on the faulty assumption that [Plaintiff] had complied with the settlement contract". Docket no. 8 at 1-2, 5. USAA offers no other substantive arguments in support of its motion to dismiss Plaintiff's TDCPA claim, nor does USAA address Plaintiff's allegation that Defendants "falsely and deceptively induc[ed] Plaintiff to enter into a settlement agreement which they did not intend to adhere to and/or intended to breach". Docket no. 1 ¶ 41.

As explained in Sections III.B and III.C of this opinion, the Court cannot conclude at this stage that Plaintiff failed to substantially perform his obligations under the alleged Agreement, nor that USAA did not breach that Agreement. As those are the only bases on which USAA has asserted that Plaintiff's TDCPA claim should be dismissed, USAA's motion is denied as to Count IV.

## CONCLUSION

For the reasons set forth above, Defendant USAA's Motion to Dismiss is **DENIED** as to Count II ("Breach of Contract") and Count IV ("Texas Fair Debt Collection Practices Act") of the Complaint, and USAA's Motion to Dismiss is **GRANTED** as to Count III ("Breach of Implied Covenant of Good Faith and Fair Dealing") of the Complaint. Because Plaintiff did not assert a cause of action against Defendant USAA under the Fair Debt Collection Practices Act, USAA's Motion to Dismiss is deemed **MOOT** as to Count I of the Complaint.

It is so ORDERED.

SIGNED this 18 day of December, 2017.

ORLANDO L. GARCIA
Chief United States District Judge